Filed 12/10/15  P. v. Guerrero CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERIBERTO MARTIN GUERRERO,<br><br>Defendant and Appellant. | F069254<br><br>(Super. Ct. No. CRL010934A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Marc A. Garcia, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Peña, J. and Smith, J.

Eriberto Martin Guerrero was convicted of child endangerment and misdemeanor resisting a police officer. He admitted two prior prison term enhancements, and was sentenced to an aggravated term of eight years in prison.

Guerrero argues the trial court erred in admitting evidence of the information provided to the police officers by the dispatch center that led to their coming to the scene of the incident. He further argues the trial court erred in admitting evidence discovered where Guerrero was hiding because it was not directly tied to him.

In this case, we need not decide whether error occurred, because the evidence against him was overwhelming and undisputed. Accordingly, any possible error was not prejudicial under any standard of review. We will affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Information*

The information charged Guerrero with child endangerment (Pen. Code, § 273a, subd. (a)),[1] and misdemeanor resisting an officer (§ 148, subd. (a)(1)). The child endangerment count also alleged two prior prison term enhancements within the meaning of section 667.5, subdivision (b).

### *The Testimony*

The testimony was limited to two witnesses. Los Banos Police Officer Ivan Mendez testified that on the day in question he received a call from the dispatch center that there was a fight in progress at a specific location. While enroute Mendez received further information identifying the suspect as a male wearing a brown shirt and blue jeans. The report indicated the male was also attempting to stab a female. Involvement of the knife made the incident more serious.

Several officers arrived at the scene at approximately the same time as Mendez. Upon his arrival, Mendez saw a male, later identified as Guerrero, and a female. Upon

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2.

seeing the arrival of Mendez in his police vehicle, Guerrero immediately sprinted towards a nearby apartment complex with a child in his arms. The officers followed and located Guerrero in the laundry room of the apartment complex. Because Mendez had been informed the male suspect was armed with a knife, Mendez withdrew his weapon from his holster. Mendez believed the other officers also withdrew their weapons.

As the officers approached the laundry room, Guerrero had the child in his arms. The child was directly in front of Guerrero. Mendez ordered Guerrero to put the child down. Guerrero looked directly at Mendez and replied, "Fuck you." Initially the child was not crying, but began to cry during the incident. After several commands, Guerrero put the child on the ground. The episode took less than one minute.

Mendez never saw Guerrero with a weapon. However, a search of the laundry room after the incident discovered a small knife behind one of the laundry machines. Mendez acknowledged that numerous individuals had access to the laundry room. No prints were obtained from the knife. Mendez also acknowledged the apartment complex had a high level of drug activity.

Detective Eduardo Sanchez Solis of the Los Banos Police Department testified the items found in the laundry room along with the knife included packaging for heroin, and instruments used to ingest heroin. Solis confirmed the laundry room was open to the public, and the complex had a high level of drug activity. However, Guererro did not appear to be under the influence of a controlled substance on the day of the incident. No drug paraphernalia was found on Guerrero, nor did anyone see Guerrero hide the items which were found in the laundry room.[2]

---

**2**     The prosecutor also called as a witness Marilyn Uribe. Uribe was arrested and incarcerated for the same incident. Guerrero was the father of her child. Uribe refused to testify, and the trial court found her in contempt.

*Closing Argument, the Verdict, and Sentencing*

The prosecutor argued Guerrero placed his child in danger because he used the child as a shield when confronted by police officers with their guns drawn. He argued this act placed the child at risk of suffering great bodily harm. Defense counsel asserted Guerrero was acting to protect his child and did not intentionally put the child at risk of harm.

The jury found Guerrero guilty of the charged crimes. Guerrero admitted the two prior prison term enhancements. The trial court sentenced Guerrero to the upper term of six years for the child endangerment count, enhanced by one year for each of the prison priors for a total term of eight years. The misdemeanor term was imposed concurrently.

## DISCUSSION

### I. Dispatch Information

Mendez testified the dispatch center informed him that a fight was in progress, and later that one of the individuals was using a knife in an attempt to stab a woman. Guerrero moved the trial court to exclude this information before trial. The trial court denied the motion ruling the information was relevant and admissible to explain Mendez's actions, i.e., why the officers proceeded with guns drawn when confronting Guerrero.

Guerrero argues this ruling was error because the information was hearsay, improper character evidence, and a violation of his right to due process. Admission of the evidence for the non-hearsay purpose of showing why the officers acted as they did was a ruling well within the trial court's discretion. The prosecutor's use of this information for its truth in argument when he asserted this evidence established that Guerrero possessed the knife, and possession of the knife was his motive for running from the police with the child, was arguably erroneous.

However, we need not decide if error occurred because even if the trial court should have excluded the evidence, Guerrero cannot demonstrate prejudice. Appellate

counsel spends a great deal of effort discussing the various standards of review, asserting in part Guerrero's right to due process was violated and we must therefore apply the standard of review established in *Chapman v. California* (1967) 386 U.S. 18, 24 (was error harmless beyond a reasonable doubt), as opposed to the "less rigorous" test for state law error established in *People v. Watson* (1956) 46 Cal.2d 818, 836 (is it reasonably probable the defendant would have obtained a more favorable result).  We need not choose between the two standards of review because Guerrero did not suffer any prejudice as a result of the purported error.

The facts relevant to the conviction were undisputed.  The police received a call, arrived on the scene, Guerrero fled while holding a child, and was cornered in the laundry room of the apartment complex.  The police confronted Guerrero with their guns drawn, and ordered him to place the child on the floor.  Guerrero initially refused with an explicit epithet, but eventually complied.  Guerrero kept the child between him and the officers until he put the child on the floor, arguably using the child as a shield when he was cornered in the laundry room.

The confrontation in the laundry room led to the charges, not what may have occurred prior to the officers arriving at the scene.  The act of child endangerment was refusing police commands to put the child on the floor when Guerrero was confronted by armed officers with their weapons displayed.  Why the weapons were displayed, or Guerrero's motivation for running, was irrelevant to the question of guilt, but helpful to understanding the events.  The information explained the officer's reaction and decision to withdraw their weapons when Guerrero ran from the scene.  Without this information, the jury would have been left to speculate about why the police chased Guerrero with weapons drawn.  The jury's speculation had the potential for being much more damaging to Guerrero rather than the minimal information actually presented to the jury.

Moreover, no one ever identified Guerrero as the perpetrator of the alleged assault, nor identified any victim.  Mendez testified to a description of the clothes worn by the

5.

suspected perpetrator. No one, however, suggested Guerrero wore the same clothes as the perpetrator.

While Guerrero was clearly the man who ran from the scene, it is not clear that he was the perpetrator of some crime whose details were never disclosed. Significantly, no facts about the alleged dispute were presented other than the brief description provided by the dispatch center to Mendez. No victim was identified, and no one suggested anyone was hurt as a result of this alleged fight. The complete lack of evidence about the alleged fight, and the absence of any evidence suggesting Guerrero was involved in the fight, rendered the information from the dispatch center harmless.

Most importantly, Guerrero was being tried for child endangerment, not a crime related to the knife or the alleged assault. And the facts relating to the child endangerment all occurred in the laundry room, were undisputed, and were unrelated to the knife that Guerrero may have possessed.

The questions asked by the jury explained not only why deliberations took four hours for a case with little evidence, but also why there is no merit to Guerrero's speculations. The first question asked for a copy of the police report, which was not entered into evidence. The request was denied. The second question requested a read back of Mendez's testimony, which was granted. The read back took approximately 20 minutes.

The third and fourth questions explain the quandary in which the jury found itself. The third question asked the trial court what the difference was between minor harm and great bodily injury, to which the court responded by referring the jury to the appropriate jury instruction. The fourth question asked the court if it could provide examples of what injury would be greater than minor or moderate harm. The trial court responded it could not do so.

These questions strongly suggest the jury was having a difficult time deciding whether Guerrero's actions were likely to produce great bodily harm. The jury was

6.

instructed the two elements the prosecution had to prove for the child endangerment count were (1) whether Guerrero willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered, and (2) whether Guerrero's acts permitted the child to be endangered under circumstances or conditions likely to produce great bodily harm. The instruction defined great bodily injury as "significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." Since the questions closely mirror the instruction, it is clear the jury conscientiously deliberated on the issue of whether Guerrero's action of holding the baby and disregarding police instructions caused the baby to be in a position likely to incur great bodily harm. It is clear the jury was not deliberating on whether Guerrero was the man who assaulted a woman when police were called to the scene, but instead focused on the facts related to the charges.

We reject Guerrero's reliance on cases discussing prior bad acts and the negative impact such cases could have on jury deliberations. The dispatch call was part of the ongoing and evolving situation, and was not evidence of anything Guerrero may have done in the past. And since Guerrero's prior prison term enhancements were bifurcated, the jury was not made aware of his criminal history.

We also reject Guerrero's claim that his character was the key issue in the case. Guerrero frames his argument as one of competing motives when he left the scene with the child in his arms. Was he running to avoid capture and/or to hide illegal items, or did he run to protect his child?

Upon examination it is clear Guerrero's argument lacks logic. If the area was unsafe before the police arrived, and Guerrero was concerned about the safety of the child, he would not have been at the scene when the officers arrived. There is no evidence or reason to suspect the scene suddenly became dangerous because the officers arrived. The testimony indicated only two individuals were present when the officers arrived, one of those individuals being Guerrero. Under these circumstances, the average

individual would expect the arrival of police to enhance the safety of the individuals present, not increase the danger to civilians unless one of the civilians was in the process of committing a crime. Accordingly, the facts strongly suggest the reason Guerrero ran when he saw the police was because he was violating the law, not for the protection of the child.

Guerrero's contention that running when the police arrived was necessary to protect his child is unavailing. Since Guerrero did not leave the scene before the police arrived, logic suggests that whatever danger may have existed had either dissipated, or was caused by Guerrero. In either case, running from the police conclusively established Guerrero's character, and the information from the dispatch center did not cause him any prejudice.

Not only is the premise of Guerrero's argument invalid, the information from the dispatch center was not relevant to the elements of the crime. Motive, the issue to which this evidence was directed, is not an element of the crime, and was not significant to the jury's deliberations. The crime occurred after Guerrero ran when he refused to obey the officers' commands.

We also reject the claim that Guerrero suffered prejudice because the prosecutor argued in closing that he was armed with a knife. The knife and drug paraphernalia were found in the laundry room to which Guerrero ran, thereby leading to a logical inference he ran to hide these items. The prosecutor argued that hiding the knife was Guerrero's motive for running from the police. This was a logical argument. Once again, however, we note motive is not an element of the crime. Therefore, no prejudice was caused by this argument.

The overwhelming evidence of Guerrero's guilt rendered any possible error regarding introduction of the evidence from the dispatch center completely harmless. Accordingly, we reject Guerrero's argument.

## II.     Introduction of the Knife

Guerrero's second argument is that the trial court erred in allowing admission of the drug paraphernalia and knife found hidden in the laundry room after he was arrested. The thrust of the argument is that the prosecution could not definitively tie these items to Guerrero, and the nature of the items caused the jury to convict him based on his purported "bad character" rather than on the evidence.

We reject Guerrero's argument for three reasons. First, he is wrong on the merits. The evidence was admissible since it was found right after Guerrero's arrest, and it was relevant because it suggested a motive for Guerrero fleeing from the scene. Second, the items were not more prejudicial than probative. (Evid. Code, § 352.) Evidence Code section 352 is designed to avoid the type of prejudice that would result in a jury prejudging a person or cause on the basis of extraneous factors, not the damage or prejudice that naturally flows from relevant, highly probative evidence. (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

Guerrero's prejudice argument focuses on the prejudicial value of the evidence in the sense it was relevant and probative, not because it would lead the jury to prejudge him. Moreover, defense counsel elicited from the testifying officers that the apartment complex and laundry room were areas frequented by drug users, and there was no direct evidence, such as fingerprints, tying him to the knife and the drug paraphernalia. And while this testimony certainly lessened the impact of the evidence, it did not render the evidence inadmissible, e.g., these facts only went to the weight to be accorded the evidence.

Third, even if we assume error occurred, Guerrero cannot establish any prejudice for the reasons stated in the preceding section. Simply stated, the evidence of Guerrero's guilt was overwhelming and undisputed, so any possible prejudice flowing from the disputed evidence was harmless under any standard of review.

9.

In conclusion, the information from the dispatch center and the discovery of the knife and drug paraphernalia simply explained why the events transpired the way they did, but did not, by themselves, establish guilt.  However, the prosecutor is entitled to present his case in the manner he sees fit so long as the evidence sought to be admitted falls within the rules of evidence.  The knife and drug paraphernalia were admissible under these rules, as was the information from the dispatch center.  In addition, the absence of any possible prejudice precludes reversal even if an error occurred.

## DISPOSITION

The judgment is affirmed.